

# Missouri Court of Appeals
## Southern District
### Division Two

MARK ALAN CLIPPARD,      )
                                      )

           Respondent,    )
                                      )  No. SD37050

   vs.                          )
                                      )  FILED: March 25, 2022

CATHERINE SUE CLIPPARD,    )
                                      )

           Appellant.     )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jerry A. Harmison, Jr., Judge

## **AFFIRMED IN PART, REVERSED AND REMANDED WITH DIRECTIONS IN PART**

Catherine Sue Clippard ("Mother") appeals the circuit court's judgment modifying child support orders that arose out of a decree dissolving her marriage to Mark Alan Clippard ("Father"). Among her contentions, Mother makes two meritorious arguments concerning the circuit court's (1) failure to make a statutorily required finding in determining child support and (2) failure to divide education costs in accordance with the parties' parenting plan. We reverse the circuit court's judgment in those respects, do not reach the remaining arguments in Mother's points, affirm the judgment in all other respects and remand the case to the circuit court with directions.

1

**Factual and Procedural Background**

The judgment dissolving the parties' marriage was entered on August 27, 2003 (the "dissolution judgment"). Two children were born of that marriage: Martha ("Daughter"), born on September 10, 1991, and Luke ("Son"), born on December 22, 1997. No party contests the following relevant facts: (1) Daughter is physically or mentally incapacitated from supporting herself, insolvent, and unmarried, *see* section 452.340.4,[1] and is receiving residential care and support from the Nova Center; and (2) Son became emancipated upon turning 21 on December 22, 2018.

The dissolution judgment incorporated an agreed upon parenting plan as part of a marital settlement agreement. In 2009, the amount of child support that Father was required to pay Mother under the parenting plan was modified upward, but provisions of the original parenting plan not addressed by the modification remained in effect. Only two requirements imposed by the parenting plan and its 2009 modification are relevant to this appeal: (1) the requirement that Father pay a total of $2,374 per month in child support with $1,700 going to the Family Support Center as trustee for Mother and the remaining $674 going directly to Mother, provided that Father would receive a dollar-for-dollar credit for Social Security benefits paid to Mother for the support, care, and benefit of Daughter; and (2) the requirement that "Father and Mother shall divide, on a pro-rata basis based on their adjusted gross income shown on their Form 1040, the cost each year for [Son] to attend a post-secondary college, university, or vocational/technical school, state or private," subject to a list of enumerated limitations, none of which are relevant.

In February and March of 2019, the parties, each alleging substantial and continuing changes in circumstances, filed competing motions to modify their child support obligations.

---

[1] All statutory references are to RSMo 2016.

After a trial in September 2020, the circuit court entered a judgment of modification. That judgment (1) reduced Father's child support obligation to $300 per month, retroactive to April 1, 2019, for the care and support of Daughter; and (2) required Mother to reimburse Father $5,823.98 for college expenses incurred by Son. A post-judgment motion, filed by Mother and raising all relevant issues, was thereafter denied.

Mother timely appeals, raising two points relied on.

## Standard of Review

"Our standard of review in a dissolution action is governed, as in any court-tried case, by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." ***Schollmeyer v. Schollmeyer***, 393 S.W.3d 120, 122 (Mo.App. 2013). "We will affirm the decree of dissolution unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." ***Barth v. Barth***, 372 S.W.3d 496, 503 (Mo.App. 2012). All of Mother's points allege that the circuit court "misapplied the law[.]" "If the issue is one of law, this Court reviews *de novo* to see if the circuit court misapplied the law." ***JAS Apartments, Inc. v. Naji***, 354 S.W.3d 175, 182 (Mo. banc 2011).

## Discussion[2]

### *Point 1 – Child Support Modification Omitted Statutorily Required Finding*

In her first point, Mother contends:

> The trial court <u>erred</u> in reducing [Father]'s child support obligation to $300.00 per month in the judgment, <u>because</u> the trial court misapplied the law in deviating from the form 14 calculation of presumed correct child support amount, <u>in that</u>, the trial court (1) failed to make the statutorily required finding that the presumed correct child support amount is unjust or inappropriate, and (2) erroneously gave [Father] credit for governmental benefits received by the child[.]

---

[2] Both of Mother's points are multifarious in violation of Rule 84.04(d) in that they contain more than a single legal reason for Mother's claims of reversible error. However, all of Mother's arguments are separately addressed, and Father does not raise any objection to the format of those arguments. Therefore, we exercise our discretion to review Mother's points *ex gratia*.

Mother's first argument is correct and, therefore, we need not reach the second.

In determining child support, the circuit court is required to follow a two-step procedure. *Sullins v. Sullins*, 417 S.W.3d 878, 881 (Mo.App. 2014); *accord* section 452.340.9; Rule 88.01.[3] "First, the trial court is required to calculate the child support amount pursuant to Civil Procedure Form 14 ("Form 14"), either by accepting one of the parent's Form 14 calculations or by performing its own Form 14 calculation." *Sullins*, 417 S.W.3d at 881. "Second, the trial court considers whether the presumed Form 14 amount is '*unjust or inappropriate*' after considering all relevant factors." *Id.* (emphasis added). Regarding the second step, "[a] written finding or specific finding on the record . . . that the application of the guidelines would be *unjust or inappropriate* in a particular case, after considering all relevant factors … *shall be required* and shall be sufficient to rebut the presumption in the case." Section 452.340.9 (emphasis added).

Father suggests that the circuit court satisfied these requirements and, in support of his argument, points to paragraphs 15 through 18 of the circuit court's judgment. Those paragraphs, *in toto*, state as follows:

15. That [Daughter] still receives the Social Security benefit of approximately $783.00 per month. In addition, Medicaid reimburses the balance of the Nova Center's cost in an amount of over $8,200.00 per month, in other words, all of [Daugther]'s [sic] are paid in full by Social Security and Medicaid.

16. Even though [Daughter] has been in residential care since October 01, 2018 Father has remained consistent in payment of $1,700.00 in Child Support to the Mother. Both parties still have expenses at their respective homes over and above the cost of the Nova Center.

17. Both parties have filed Motions to Modify seeking the Court to recalculate child support. The Father asserts he should owe no child support since all of the child's expenses are paid in full by Social Security and Medicaid. Mother asserts that Father should still pay child support because she still has expenses for the child. The Court finds from the evidence presented that both parents

---

[3] All rule references are to Missouri Court Rules (2021).

still support the minor child by purchasing clothes, meals and providing weekend accommodations for the child.

18. The Court finds that the presumed amount of child support pursuant to a new Form 14 calculation is as set out in [Mother]'s Exhibit 101 in the amount of $1,916.00 per month. This amount of support does not take into account the Social Security Disability payments received by [Daughter] nor does it take into account the Medicaid payments made to the Nova Center and the Court therefore deviates downward to the amount of $300.00 per month. This amount of support will allow Mother to continue to provide various clothing, food and to help provide a place for overnight visitation. The Court notes Mother has income pursuant to her Form 14 of over $4,300.00 per month. The support she's been receiving from Father since [Daughter] entered the Nova Center has been a windfall to the Mother. In fact, she testified that she was using that child support money to pay for her attorney fees in this action.

Paragraphs 15 through 18 reveal that the circuit court satisfied the first required step—it accepted Mother's Form 14 calculation as the presumed child support amount. The circuit court then rejected this amount, stating that it did not "take into account" Social Security Disability or Medicaid payments to Daughter and the Nova Center. In that rejection, however, the circuit court made no finding addressing the second required step—that the presumed child support amount is "unjust or inappropriate" as is required to rebut the presumption. *See **Sullins***, 417 S.W.3d at 881; section 452.340.9; Rule 88.01.

Generally, "[w]here the trial court enters an award of child support which varies from the amount calculated pursuant to Form 14, and fails to make a finding that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate, such failure is error which requires reversal and remand." ***Myers-Geiger by Myers v. Geiger***, 878 S.W.2d 925, 927 (Mo.App. 1994). Father presents us with no argument directly addressing the circuit court's material omission or any authority suggesting that reversal and remand is not required in this case.

Accordingly, to the extent that Mother's first point claims that the circuit court erred in deviating from the presumed Form 14 amount without first finding that the amount was unjust or

5

inappropriate, it has merit and is granted. As such, having granted point 1, we need not review or address Mother's remaining argument—alleging that the circuit court "erroneously gave [Father] credit for governmental benefits received by the child"—because this argument contains an alternative ground for relief that may become moot following remand. *See **O'Hare v. Permenter***, 113 S.W.3d 287, 289 n.2 (Mo.App. 2003) ("Issues that are not essential to a disposition of the case should not be addressed." (Internal quotation marks and citation omitted)).

### *Point 2 – Reimbursement Amount for College Expenses was Miscalculated*

In her second point, Mother contends:

> The trial court erred in ordering [Mother] to reimburse [Father] $5,823.98 for [Son]'s education expenses in its judgment, because the trial court misapplied the law, in that, (1) the education expense provision of the parenting plan is too amorphous, indefinite, vague, and uncertain to be enforced, and (2) the trial court failed to make requested findings necessary to determine whether calculation of the amounts due involved ministerial computation or discretion, materially affecting the action and impeding appellate review[.]

Mother's arguments, as phrased in her point relied on, are incorrect. However, we determine that the circuit court erred for reasons that Mother expressly identifies in her discussion of her second argument.

### *The Education Expense Provision of the Parenting Plan is Not Too Amorphous, Indefinite, Vague, and Uncertain to be Enforced*

The "education expense provision" of the parenting plan requires that "Father and Mother shall divide, on a pro-rata basis based on their adjusted gross income shown on their Form 1040, the cost each year for [Son] to attend a post-secondary college, university, or vocational/technical school, state or private . . . ."

In challenging this provision, Mother cites and relies on ***Echele v. Echele***, 782 S.W.2d 430, 436 (Mo.App. 1989) (abrogated on other grounds by ***Rallo v. Rallo***, 477 S.W.3d 29

6

(Mo.App. 2015)), for the proposition that if a divorce decree "is so amorphous, indefinite, vague and uncertain that it requires a subsequent hearing to determine its meaning and which involves discretion, the decree is void and unenforceable." Such is the case here, Mother contends, because "the Parenting Plan does not provide whether the Form 1040s to be used were for the school year of the educational expenses, the calendar year in which the educational expenses were paid, or the year of the Divorce Decree." She then directs us to instances in the trial transcript where both she and Father expressed confusion as to what the challenged provision actually requires.

However, "[i]n interpreting a separation agreement incorporated into a decree, the normal rules of contract construction apply." *Harvey v. Harvey*, 325 S.W.3d 495, 498 (Mo.App. 2010). Thus, "[w]hen the language of a provision is in dispute, the court must determine the parties' intent as manifested in the document itself and not by what the parties say they intended." *Id.* "This is done by giving the words of the agreement their plain and ordinary meaning as understood by a reasonable and average person." *Id.*

Here, a reasonable and average person would know that "Form 1040" within the phrase, "Father and Mother shall divide, on a pro-rata basis based on their adjusted gross income shown on their Form 1040," is the form that is filed as part of an individual federal tax return for any given *calendar year*. The phrase that follows contains the object of the parties' division—"the cost each *year* for [Son] to attend a post-secondary college, university, or vocational/technical school, state or private." (Emphasis added.) When these two phrases are read together, therefore, a reasonable and average person would understand that the *calendar year* of the Form 1040s used in the pro-rata division calculation must correspond with the "year" giving rise to a cost subject to such division. In other words, the parties' 2016 Form 1040s should be used for

7

Son's 2016 calendar year educational costs, their 2017 Form 1040s should be used for 2017 calendar year costs, and so on in that manner.

In sum, the education expense provision is not too amorphous, indefinite, vague, and uncertain to be enforced and, accordingly, Mother's first argument fails.

*The Circuit Court's Calculation Misapplied the Law as to Education Costs in 2018*

Mother next identifies three requests for "findings" that she proffered in a pretrial motion regarding the education expense provision. Under Rule 73.01(c), "[t]he court may, or if requested by a party shall, include in the opinion findings on the controverted material fact issues specified by the party." The requests in question, which she alleges that the circuit court failed to address in its judgment, state as follows:

6. If the Court determines that Mother owed a pro-rata share of [Son]'s college expenses, how did the Court determine that share and what year's adjusted gross income did the Court use to determine Mother's obligation for each semester?

7. Did the parenting plan adopted in the original judgment for divorce entered herein in 2003 specify how to determine which year's adjusted gross income as shown on their Form 1040 would be used to determine their pro-rata share of college expenses for [Son]?

8. Was the provision for pro-rata allocation of college expenses capable of determination with a ministerial calculation, or was it necessary for the Court to interpret the meaning of the provision[?]

This argument misses the mark. None of the three aforementioned requests call for any "findings" of fact; rather, they call for conclusions of law in that they seek the interpretation of some aspect of the education expense provision. Our discussion of Mother's previous argument, *supra*, however, addresses and resolves these issues. Therefore, assuming without deciding that the circuit court failed in some manner to interpret the education expense provision, the failure to do so is moot and does not materially impair our review. "Where the failure to make findings of

8

fact and conclusions of law does not materially impair our ability to review the trial court's order, such failure is not reversible error." ***Darr v. Darr***, 950 S.W.2d 867, 871 (Mo.App. 1997).

This holding, however, does not end our inquiry. As part of her discussion, Mother further identifies, correctly, that there is an inconsistency in the manner that the circuit court calculated the division of Son's education costs. As relevant here, paragraph 12 of the circuit court's judgment, *in toto*, states as follows:

12. Both parties pursuant to the original judgment and the last judgment of modification owed college expenses for [Son] up thru and including the fall semester of 2018. That Father sent multiple demand letters to Mother requesting reimbursement of college expenses which were paid 100% by the Father. The Mother has refused to reimburse Father said college expenses claiming that the underlying parenting plan was unclear and un-enforceable. The Court finds that the parenting plan is capable of enforcement and should be calculated by the parties['] prorata incomes each year that [Son] was in college. The Court finds that the calculations set forth in [Father]'s exhibits 119 and 120 are determinative on this issue and that Mother owes Father $5,823.98 for her share of [Son]'s total college expenses from the fall of 2016 thru the fall of 2018.

In concluding that exhibits 119 and 120 are "determinative" of the amount Mother is required to reimburse Father, the circuit court misapplied the law. To reach the $5,823.98 reimbursement figure cited and relied on by the circuit court in its judgment, these exhibits use the parties' 2016 income to calculate their pro-rata share of Son's 2016 educational costs, their 2017 income to calculate their share of his 2017 costs, and their *2017 income* (again) to calculate their share of his *2018 costs*. This latter calculation—using 2017 income to divide 2018 costs— misapplied the law in that it violates the requirement, as explained *supra*, that the calendar year of the parties' income, reflected by their Form 1040s, must correspond with the year giving rise to the education costs subject to division.

Accordingly, to the extent that Mother argues that the use of the parties' 2017 income to divide Son's 2018 educational costs violates the education expense provision, Mother's second point has merit and is granted.

## Decision

For the above reasons, the child support award and the amount of the education expenses ordered to be paid by Mother in the circuit court's judgment are reversed and the case is remanded to the circuit court with directions to: (1) take whatever action it deems necessary and appropriate to determine whether the Form 14 presumed correct amount of child support is unjust and inappropriate and then, based upon that determination, to proceed accordingly to enter judgment on the parties' child support claims, which judgment shall include all statutorily required findings, if any, and (2) recalculate Mother's share of Son's 2018 educational costs using the parties' 2018 Form 1040s and enter judgment accordingly. In all other respects, the circuit court's judgment is affirmed.

GARY W. LYNCH, C.J. – OPINION AUTHOR

MARY W. SHEFFIELD, P.J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS